## No. 2671.

### ED BROWN *v.* THE STATE.

1. PERJURY—INDICTMENT.—See the opinion in extenso for the substance of an indictment *held* sufficient to charge the offense of perjury.

2. SAME—EVIDENCE—CHARGE OF THE COURT—CASE STATED.—The prosecution in this case was for perjury, alleged to have been committed by the accused when he testified at the trial of one Williams for assault to murder. Upon the introduction of one Moore as a witness for the defense, in the present case, the State offered, and was permitted, over the defendant's objection, to read in evidence an indictment then pending against the said Moore, wherein the said Moore was charged with perjury upon the same trial as that in which the defendant is charged to have committed perjury. *Held* that, though the indictment was not admissible to impeach Moore's competency as a witness, it was admissible as matter going directly to his credibility, and as tending to show a motive for his testimony in this particular case. Being admissible for these purposes, it was not incumbent on the trial judge, in his charge, to limit and restrict it, inasmuch as it did not tend to exercise a wrong, undue or improper influence upon the jury as to the main issue.

3. SAME—FACT CASE.—See the statement of the case for evidence which, though conflicting, satisfied the jury, whose province it was to determine its weight and credibility, and is *held* sufficient to support a conviction for perjury.

APPEAL from the District Court of Falls. Tried below before the Hon. Eugene Williams.

The conviction in this case was for perjury, alleged to have been committed by the appellant, upon the trial of one Guy Williams for assault to murder. The penalty imposed by the verdict was a term of five years in the penitentiary. The brief of counsel for the appellant shows the objections urged against the sufficiency of the indictment, which covers nine pages of the transcript.

Charles H. Bartlett was the first witness for the State. He testified, in substance, that he was the clerk of the district court of Falls county, Texas, at the July term, 1886, of the said court. That term of the said district court included the fourth day of August, 1886, on which day the case of the State of Texas v. Guy Williams, charged with an assault with intent to murder one George H. Gassaway, was tried. The witness remembered that

his only deputy, Zenas Bartlett, did not officiate in the proceedings of the court during that term, and that he himself attended alone upon the court at that term. He remembered distinctly that he administered the oath to the main body of the witnesses in the Williams case, when they were called to the bar, at the beginning of the trial. He could not say that the defendant was among the main body of witnesses so sworn by him; nor did he have any recollection of administering the oath to the defendant separately. But he did distinctly remember that the defendant testified in behalf of the said Williams on that trial.

Z. D. Harlan testified, for the State, that he was one of the counsel for the State who prosecuted the case against Guy Williams for assault to murder Gassaway. As such counsel, he was present on the fourth day of August, 1886, when the case was tried, and observed all the proceedings and heard all the evidence adduced in the case. He remembered that the main body of the witnesses were called to the bar at the beginning of the trial, and were sworn, but could not remember that the defendant was among the main body. He could not remember who administered the oath, independent of his recollection that District Clerk C. H. Bartlett did all the work of his office in the court room during that term. He remembered that the defendant testified on that trial, as a witness on behalf of Williams. The substance of the defendant's testimony on that trial was that he was standing in the south door of Simon's saloon when the alleged assault upon Gassaway was made by the said Williams; that he saw the said Williams enter the said saloon with a gun under his arm, and walk towards where Gassaway, talking to another man, was leaning against a billiard table about midway between the north and south extremes of the saloon; that Williams stopped near Gassaway, who was looking south, and said to him: "I heard that you called me a God d—d son of a bitch;" that Williams was then holding his gun under his arm, with the muzzle pointing towards the floor; that Gassaway then attempted to draw a pistol from his breast; that he, defendant, saw a part of the pistol, the handle of which he described by color; that before Gassaway could get his pistol out, Williams raised his gun and covered Gassaway with it, and told Gassaway that if he drew a weapon he, Williams, would kill him; that about that time Clark Williams came in, seized Guy Williams, and conducted him out of the saloon. The witness did not think that the defendant, in his said testimony, claimed to have been pres-

ent at Simon's saloon throughout the entire difficulty between Williams and Gassaway.

B. B. Clarkson, the next witness for the State, testified that he assisted the witness Harlan in the prosecution of Williams for the murderous assault upon Gassaway, but had no recollection of the defendant's testifying upon that trial.

J. R. Dickinson testified, for the State, that he was an attorney at law, and represented Guy Williams upon his trial in the district court of Falls county, in August, 1886, for a murderous assault upon Gassaway. He remembered distinctly that the defendant testified for Williams on that trial, and that his testimony was substantially as the witness Harlan had related it. Independent of the fact that defendant testified without objection, the witness had no recollection that he was sworn as a witness.

G. H. Gassaway was the next witness for the State. He testified that he was the individual upon whom Guy Williams was charged to have committed the murderous assault on December 23, 1885, in Simon's saloon, in Marlin; and for which the said Williams was tried in the district court of Falls county on the fourth day of August, 1886. He attended the said trial of Williams as a witness, but, being under the rule with other witnesses, he did not hear the defendant testify. The witness stated that he was in Henry Simon's saloon, in Marlin, Falls county, Texas, on the twenty-third day of December, 1885. While leaning against a billiard table in that saloon, facing south, and talking over a business matter with a Mr. Story, his attention was attracted by the clicking of the hammers of a gun. As he turned his head, Guy Williams, who had then reached a point nearly in front of witness, threw his gun down on witness, and said with an oath that he was going to kill witness. Witness replied: "I reckon not." About that time, and while Guy Williams still held the gun on witness, Clark Williams entered the saloon, seized Guy Williams with one hand, and the gun with the other, and took Guy, and his gun out of the saloon. The witness did not change his position while Williams had him covered with his gun, except to turn his head when he heard the clicking of the gun hammers. The witness then had no pistol on his person, nor did he make a motion as if to draw one from his breast or elsewhere about his person.

Cross examined, this witness reiterated, with great positiveness and emphasis, that he had no pistol of any kind on his

person when he was assaulted by Guy Williams; that he did not make a demonstration with either of his hands as if to get a weapon of any kind from his breast or elsewhere, and that, in fact, he did not even move his hands while he was covered with the gun held in Williams's hands, nor did he advance a step or a fraction of a step on Williams. At this point the witness was asked if it was not a fact that, when Williams, when he entered Simon's saloon, said to witness: "Mr. Gassaway, I heard that you called me a d—d son of a bitch, and that you said that you was going to kill me if it cost you a hundred thousand dollars," and that he replied to Williams: "What if I did," and that he then placed his hand in his bosom and partly drew out a white handled pistol, displaying the handle, and if Williams did not then cover him with the gun, and tell him that he would kill him if he did not put the pistol back?" To this question the witness replied with a positive denial. He stated that he was as positive that he did not place his hand to his breast, as he was that he did not partially draw a pistol and expose the handle, and that, he had no pistol on his person. The witness at the time he was assaulted by Williams, owned a white handled revolver pistol, but did not have it on his person that day. Witness had eaten his dinner when the assault was made upon him by Williams, and had taken one drink of whisky.

James Storey was the next witness for the State. He testified that he witnessed in part the assault made on Gassaway by Guy Williams, in Simon's saloon, in December, 1885. He was standing at the billiard table, facing north, talking to Gassaway when Williams entered the saloon, confronted Gassaway, covered him with his gun and said to him: "I heard you have cursed me for a God d—d son of a bitch." Witness immediately left, and went to the front door. About that time a black negro entered the saloon, seized Williams, and took him, with the gun, out of the saloon. Gassaway made no attempt to draw a weapon from his bosom or elsewhere, up to the time witness left the billiard table and went to the door, nor did he, during that time, expose any part of a pistol, nor did he move from his position at the billiard table during the difficulty. Witness did not hear Williams threaten, by word, to kill Gassaway, but did hear him tell Gassaway not to move.

Henry Simon, the proprietor of Simon's saloon, was the next witness for the State. He testified that he was in his saloon, behind his counter, on the day in December, 1885, when Guy

Williams drew a gun on Gassaway. While Gassaway and Storey were standing at the billiard table talking, Williams entered the saloon at the front door, armed with a gun. He walked up to Gassaway, touched him, and said to him: "You cursed me for a d—d son of a bitch; if you move I will blow your brains out." Gassaway was leaning on the billiard table, and was facing south, until Williams touched and spoke to him, when he turned and faced Williams and the north and said: "Well, I will not move." Gassaway made no motion of his hand to his breast, after he turned and faced the north, nor did he expose a pistol. If he made a motion with his hand or exposed a pistol before he turned his face from the south to the north, the witness, who was looking from the north, could not have seen it. The defendant may possibly have been in the saloon during the difficulty, but if he was the witness did not see him. There were quite a number of persons in the saloon at that time.

Will Nicholson testified, for the State, that he was engaged behind Simon's bar at the time of the assault upon Gassaway by Williams. From his position at the time he could see what occurred, but could not hear what was said. He saw Williams go up to and cover Gassaway with his gun. Gassaway did not partially draw and expose a pistol, nor did he make any demonstration with his hand as if to draw a weapon from his bosom or elsewhere on his person. It was possible for the defendant to have been in the saloon during the difficulty, but if he was, the witness did not see him.

Clark Williams, the step father of Guy Williams, testified for the State, that he did not see the beginning of the difficulty between Gassaway and Guy Williams in December, 1885, but entered the saloon after he was informed that trouble was imminent. He found Guy Williams in that saloon with his gun drawn on Gassaway. He knocked the gun up and seized Guy, whom he took out of the house. Gassaway did not draw or attempt to draw a pistol while witness was in the saloon. The witness was a witness on the trial of Guy Williams, and, pending that trial, was under the rule with the other witnesses in the case. The defendant was a witness under the rule with him, but witness could not remember that he saw the defendant sworn.

Henry Lard testified, for the State, that he was in Simon's saloon at the time of the difficulty between Gassaway and Guy Williams. He could not see the row from the position he occupied, but saw Clark Williams take Guy out of the house. If the

defendant, whom witness knew well, was among the large number of people in the saloon at that time, witness did not see him.

The State next introduced in evidence the indictment against Guy Williams, charging him with assault to murder G. H. Gassaway, the judgment rendered thereon, and the subpœna for the defendant as a witness for the said Guy Williams.

State closed.

Billy Graves and Alex. McDonald, witnesses for the defense, concurred in their testimony that they were in the Simon saloon at the time of the difficulty between Gassaway and Guy Williams. Their attention was attracted by Guy Williams, who approached Gassaway and demanded that he retract some remark about him, Williams, made by the said Gassaway. The witness then saw Gassaway put his hand about his vest pocket and make a movement towards Williams, when Williams covered him with his gun. The witness did not see a pistol, nor the part of a pistol on Gassaway's person.

William Moore, the defendant's half brother, testified for the defense, that he was in Simon's saloon, and witnessed the difficulty between Gassaway and Guy Williams. While he was standing at the bar, facing Mr. Simon and Mr. Nicholson, one or the other of whom was filling a bucket with beer for him, he saw Guy Williams enter the front door, carrying his gun with the stock under his arm and the muzzle pointing towards the floor. Williams, carrying his gun as stated, went up to Gassaway, who was leaning over a billiard table talking to another man, and told him to take something back. Witness could not hear what was said by the parties, but saw Williams draw his gun on Gassaway when Gassaway thrust his hand in his breast pocket and drew a pistol far enough out for the witness to see the white handle of it. Williams told Gassaway not to draw that pistol or he would shoot him.

On his cross examination the witness stated that after Clark Williams came in, and while Clark was taking Guy out, Gassaway followed Clark and Guy, and said something to the effect that they had better take Guy out. When Gassaway got nearly to the back door, following Clark and Guy, he took his pistol entirely out and held it in his hand, and witness saw that it was a white handled revolver. Witness followed Clark and Guy, and, before he got out of the saloon, he passed and spoke to Gassaway.

Guy Williams testified, for the defense, that he was the party

who had the difficulty with Mr. Gassaway in Simon's saloon, in December, 1885, and who was tried for that offense in August, 1886. That indictment was still pending against him. The witness went into Simon's saloon on that day to find Mr. Gassaway. He took his gun with him, and carried it with the stock under his arm, and the muzzle extending towards the floor. He found Mr. Gassaway engaged in a game of billiards, with a billiard cue in his hand. Witness touched Gassaway on the shoulder and said to him: "Mr. Gassaway, did you not, when I passed you on the street, say that I was a God d—d son of a bitch, and that you would kill me within twenty-four hours if it cost you a hundred thousand dollars?" Mr. Gassaway replied: "What if I did? What are you going to do about it?" Witness then said to Gassaway: "If you intend to kill me, I think the law allows me to protect myself, and I will not give you a chance to kill me." Thereupon Gassaway began to unbutton his vest. When he got several buttons loose he thrust his hand in his bosom, and partially drew out something which the witness took to be a white handled pistol. Witness could not see enough of the white object to be able to swear positively that it was a pistol, but he took it to be a pistol, and acting upon that belief, he covered Gassaway with his gun and told him that he would kill him if he drew that pistol. Witness then turned to leave, when Gassaway applied some epithet to him. Witness turned immediately, and, thinking that Gassaway had his pistol entirely out and in his hand, again presented his gun. About this time Clark Williams came in, seized witness and pushed him out of the saloon through the back door. While being pressed out, witness called to the parties not to disarm him, as he feared Gassaway would shoot him with the pistol. Gassaway had the billiard cue in his hand when the witness first drew his gun on him. Witness did not know when Gassaway put the cue down.

John Jackson and Tom Soders, witnesses for the defense, testified that they saw the defendant in the town of Marlin on the day of the difficulty between Gassaway and Williams, but neither of them saw him in Simon's saloon.

The defense closed.

George H. Gassaway, recalled by the State, testified, in rebuttal, that he did not follow Clark and Guy Williams as far as the back door when the latter was being taken out by the former, nor did he draw a pistol at or near the back door, nor elsewhere in that saloon on that day, either before or after the

arrival of Clark Williams.    As soon as Clark Williams took Guy out of the saloon, witness left the saloon through the front door, and went across the street to King's saloon, and thence home.

Clark Williams testified, for the State, in rebuttal, that he did not, while taking Guy Williams out of the saloon, hear the said Guy ask him or anybody else not to take his gun from him, or say that he was afraid that Gassaway would shoot him "with that pistol."   Guy said :   "Don't take my gun; Gassaway will shoot me."

Alex. McDonald testified, for the State, in rebuttal, that Gassaway followed Clark and Guy Williams a short way towards the back door, and then paced the room crosswise, "fumbling" about his vest pocket in an angry manner.   Gassaway pulled no pistol then nor at any other time in the saloon, so far as the witness knew or saw.

Henry Simon testified, for the State, in rebuttal, that he saw William Moore at the show case in the front of the saloon while the row between Gassaway and Guy Williams was in progress. Moore followed Clark and Guy to and out of the back door. Gassaway remained in the saloon for some time after the difficulty.

The State closed the case by introducing in evidence an indictment charging the witness William Moore with perjury committed by him as a witness for the defense in the case of The State of Texas v. Guy Williams, for assault with intent to murder George H. Gassaway.

The motion for new trial raised the questions discussed in the opinion.

*Alexander, Winter & Dickinson,* for the appellant:   The court erred in overruling defendant's special exceptions to the indictment, based upon the last two assignments of perjury made therein, the ground of the exceptions being that the facts assigned as perjury differ in the statement of them and in their legal import from the facts testified to by defendant, as alleged in the indictment.

The truth of the alleged statement made by one charged with perjury must be expressly negatived, and an assignment as perjury of facts which differ materially from the facts stated by the accused in their legal import is bad.

A statement that witness saw W. holding his gun with the muzzle down in the direction of G., and that at the time the said

W. was so holding the gun, witness saw G. have a pistol in his breast, and saw him try to get it out; that he saw G. pull the same out and present it upon W. in a threatening manner, will not support a traverse as follows: "Whereas, in fact said witness never saw G. with a pistol at the time W. was making an assault upon G. with a gun," or as follows: "Whereas, in fact said G., at the time said W. was making an assault upon him with a gun, never had a pistol of any kind."

The indictment alleged that the defendant did "testify that on the evening of December 23, 1885, he was in the back part of the saloon of one Henry Simon, in the town of Marlin, when a difficulty occurred between George H. Gassaway and Guy Williams, and that he was present all the time looking at the same; that he saw them standing near each other; near a billiard table in said saloon; and that he saw Guy Williams holding his gun, with the muzzle down, in the direction of Gassaway; and that at the time that the said Guy Williams was so holding his gun, he (the said Ed. Brown) saw the said Gassaway have a pistol in his breast, and saw him try to get the same out; that he saw the said Gassaway pull the same out and present it upon the said. Guy Williams." The foregoing are all the facts alleged in the indictment as having been sworn to by defendant. The indictment, among others, contains the following assignments of perjury: "Whereas, in truth and fact, the said Ed. Brown never saw George H. Gassaway with a pistol on the evening of the twenty-third of December, 1885, at the saloon of Henry Simon, in Marlin, Falls county, Texas, at the time that the said Guy Williams was making an assault upon the said Gassaway with a gun; whereas, in truth and in fact, the said George H. Gassaway, at the time that the said Guy Williams was making an assault upon him with a gun on the evening of the twenty-third of December, 1885, in the saloon of Henry Simon, in Falls county, Texas, never had a pistol of any kind."

Appellant excepted to these assignments in the indictment on the ground that "it does not appear from said alleged testimony that said Guy Williams, at the time spoken of by defendant, was making an assault upon the said Gassaway, nor does it appear, by averment or otherwise in said indictment, that the time referred to in said assignment of perjury is the same time referred to by defendant in his alleged testimony." Appellant's exception was overruled and bill reserved. (Gabrielsky v. The State, 13 Texas Ct. App., 436; Massie v. The State, 5 Texas Ct.

App., 81; Martinez v. The State, 7 Texas Ct. App., 394; Rohrer v. The State, 13 Texas Ct. App., 166; Donahoe v. The State, 14 Texas Ct. App., 652; Hernandez v. The State, 18 Texas Ct. App., 134.)

The court erred in permitting the State, over the objection of defendant, to introduce in evidence the indictment in cause No. 1923, styled The State of Texas v. William Moore, in that said indictment was incompetent testimony, and calculated to prejudice defendant's cause. If the object of the evidence was to impeach the witness Moore, it was not competent even for that purpose, and it was not competent for any other purpose.

Indictment 1923, The State v. William Moore, charges William Moore with perjury committed on the trial of Guy Williams, on August 3, 1886, and his testimony, assigned as perjury in the indictment, is substantially like the assigned false testimony in the case at bar. The circumstances of the admission of the indictment as evidence, we give in the language of the trial judge.

"As to the indictment against the witness, Wm. Moore, the facts are: That the county attorney began to discuss the credibility of the witness on the ground that he was indicted for a similar offense involving the same transaction. The defendant objected, on the ground that it had not been proved that the witness was so indicted. The State contended that the bill of indictment had been introduced. The court held that it had not been. The county attorney then offered to introduce it, to which the defendant objected. The court overruled the objection and granted the State leave to introduce the indictment; it was considered in evidence, but not read to the court or jury. The county attorney stated that it was an indictment for perjury, based on the same transaction with the case on trial, and argued the bearing of this prosecution on the credibility of the witness Moore. This was the only mention made of the indictment, and went to the jury on the issue of the credibility of the witness. To all of this proceeding the defendant then and there objected." (Clark v. The State, 18 Texas Ct. App., 472; McGuire v. The State, 10 Texas Ct. App., 126; Fore v. The State, 5 Texas Ct. App., 253; Harper v. The State, 11 Texas Ct. App., 26; Heard v. The State, 9 Texas Ct. App., 22; Long v. The State, 17 Texas Ct. App., 130; Chumley v. The State, 20 Texas Ct. App., 556.)

The second paragraph of the charge did not follow the assignment of perjury made in the indictment. The indictment charges that, in truth, Gassaway did not have a pistol, and de-

fendant did not see him with one while Williams was making an assault on him with a gun. The charge is: "If the jury believe the defendant testified  *  *  *  that he saw Gassaway with a pistol at the time Williams was holding his gun with the muzzle down, and that, at the time said Williams was so holding said gun, said Gassaway had a pistol  *  *  *  they would find defendant guilty.

The court erred in failing to instruct the jury, limiting the purpose for which the indictment against William Moore, given in evidence by the State, might be considered. William Moore, a witness for appellant, was also indicted for perjury, alleged to have been committed on the trial of Guy Williams for an assault with intent to murder George Gassaway. The indictment against Moore was introduced by the State as evidence. No charge was given relative to this testimony. (Davidson v. The State, 20 Texas Ct. App., 382; Tyler v. The State, 13 Texas Ct. App., 205; McCall v. The State, 14 Texas Ct. App., 353.)

*W. L. Davidson,* Assistant Attorney General, for the State.

White, Presiding Judge. The conviction in the lower court was for perjury, predicated upon testimony given by defendant as a witness on the trial of one Guy Williams for assault with intent to murder.

Exceptions were made to the sufficiency of the indictment, and they are again insisted upon on this appeal. We are of the opinion, after close scrutiny of the allegations, that they are sufficient even though the pleader has made his assignment to hinge unnecessarily close to statements made by defendant with regard to an *assault* by Williams upon one Gassaway. The excerpt from defendant's testimony, as set forth, and upon which the perjury is assigned, though not saying in terms that Williams was making an assault, shows facts constituting an assault. He says "he saw" the parties, Williams and Gassaway, "standing near each other, near a billiard table, in said saloon, and that he saw Guy Williams holding his gun *with the muzzle down in the direction of Gassaway.*" If the parties were close together, and Williams was holding the gun with the muzzle in the direction of Gassaway, we think it is equivalent to saying that he was pointing the gun at Gassaway; which sufficiently charges an assault in so far as necessary to be charged in connection with the other allegations in the indictment.

It was competent to introduce a pending indictment for perjury against defendant's witness Moore, based upon the same transaction out of which this prosecution grew, not, indeed, as to his competency, but as matter going directly to his credibility with the jury in this case. It tended to show the motives for the witness's testimony in this particular matter. For the purpose for which it was thus admitted and admissible, it was not incumbent upon the court specially to limit and restrict its purposes in the charge, because the evidence in no manner tended to exercise a wrong, undue or improper influence upon the jury as to the main issue. (Davidson v. The State, 22 Texas Ct. App., 373.) This evidence did not fall within the rule which requires of the court that it should be limited and restricted. Notwithstanding the criticisms made by counsel upon the charge of the court, we think it is substantially and sufficiently applicable to the facts, and presented the law fairly upon the issues made.

As to the sufficiency of the evidence, suffice it to say that it is conflicting and its weight and credibility were peculiarly within the province of the jury to determine, and, if they believed the State's witnesses, then the case was fully made out.

Our examination of the record has furnished us with no reason demanding a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Opinion delivered November 2, 1887.