## Albert Cundiff v. The State.

No. 5455.   Decided January 14, 1920.

Rehearing denied February 25, 1920.

**1.—Murder—Continuance—Practice in District Court—Want of Diligence.**

Where, upon trial of murder, it appeared in the record on appeal that the alleged absent witness was indicted without evidence and for the pur-

pose of bringing her back as a witness, this fact would not disqualify the witness and such practice was improper. however, it further appearing that the alleged testimony of said absent witness was not probably true or that the witness would not have testified as alleged and that, besides, there was a want of legal diligence, the application for continuance and motion for new trial are therefore properly overruled.

### 2.—Same—Evidence—Practice on Appeal.

Where, upon trial of murder, the action of the court in allowing the State's counsel to ask a witness whether he knew or did not know that certain parties were with the defendant at the time of the shooting, could not have had any injurious effect, there was no reversible error.

### 3.—Same—Temporary Insanity—Hypothetical Case.

Upon trial of murder, where defendant pleaded insanity, there was no error in putting a hypothetical case to the physician witness whether a certain quantity of morphine would cause temporary insanity, the same being borne out by the testimony.

### 4.—Same—Remarks by Court—Rule Stated.

Where the remarks by the court were in no way an intimation as to the case on the weight of the evidence, but was merely a statement that the court did not remember said evidence, there was no reversible error.

### 5.—Same—Charge of Court—Sufficiency of the Evidence.

Where, upon trial of murder, the defendant pleaded insanity and the evidence did not raise the issues of manslaughter or negligent homicide, and the evidence was sufficient to sustain the conviction on a proper charge on murder and temporary insanity, there was no reversible error.

### 6.—Same—Charge of Court—Weight of Evidence.

Where the wife of the defendant testified that the tablets used by him were morphine tablets, the trial court did not err in referring to the same as morphine.

### 7.—Same—Rehearing—Continuance—Practice on Appeal.

Where, upon motion for rehearing, the appellant again urged that he should have been granted a continuance for the absence of a certain witness, the motion must be overruled, as there was a want of diligence to obtain the presence of said witness, and it does not appear from the record that the witness would have testified as alleged or that her testimony would have likely produced a different result.

Appeal from the District Court of Hopkins. Tried below before the Hon. Wm. Pierson, judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard, Thornton & Thornton,* for appellant.—On question of refusing continuance. Doughty v. State, 18 Texas Crim. App., 179; Dodson v. State, 52 Texas Crim. Rep., 247, 106 S. W.

Rep., 375; Bennett v. State, 81 id., 30; Roberts v. State, 67 Texas Crim. Rep., 580, 150 S. W. Rep., 627.

On question of remarks by court: Taylor v. State, 38 Texas Crim. Rep., 241; Simmons v. State, 55 id., 441; Scott v. State, 72 id., 26.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Hopkins County, of the murder of one Bob Trevillion, and his punishment fixed at ten years confinement in the penitentiary.

The case was first set down for trial on February 20, 1919, and when called, appellant asked and obtained a postponement, on account of the absence of Annie Ashley—the case being then postponed to February 27th. On the latter date, appellant asked for a continuance of the case, on account of the absence of said witness, and the overruling of his application is assigned here as error.

It appears that appellant was indicted for assault to murder, before the death of deceased, and it is set forth in said application for continuance, that he had caused a subpoena to issue and be served on said witness, to appear in his behalf in August, 1918, at the trial of said assault to murder case, in obedience to which process she did in fact appear.

On September 23, 1918, the death of deceased took place, and on September 28th, appellant was indicted for murder; and later the case, on call, was set for trial February 20, 1919. It further appears that on January 29, 1919, the State caused a subpoena to issue to Hunt County, for said witness Annie Ashley, which was returned on February 7th, not served, because of the removal of the witness to Hopkins County; that on February 8th, appellant caused a subpoena to issue to Hopkins County for said witness, which was later returned by the sheriff, without in any manner filling out the blank return thereon; that on February 8th, the State had an attachment issued to Hopkins County for said witness, which had neither been served nor returned at the date of said application. Appellant says that he has made diligent search and inquiry for said witness, but is unable to ascertain where she may be found, and had no idea of her whereabouts at the time of making said application; that she boarded a train at Greenville about six weeks before the date of the trial, and he can find no one who knows of her whereabouts since. The substance of the facts expected to be proven by said witness, appear later in the opinion.

The application was filed and presented on March 5th, and the court overruled the same. Appellant set up this action of the court as ground for his motion for a new trial, and when the same came on to be heard, the State, through the district attorney, contested that portion of said motion, upon the ground that said witness could not have testified, she being under indictment for the same offense

charged against appellant; and further, that both she and her husband were fugitives from justice at the time of the trial; and further, that said witness would not have likely testified as set out in said application, had she been present and qualified.

An examination of the facts adduced before the court at the hearing upon said contest, shows that the indictment against Annie Ashley was not returned until February 27, 1919, same being the date to which the instant trial was postponed, and also the day upon which it was called for trial. The district attorney was placed on the stand by appellant, in support of said motion, and admitted that the witnesses to the killing were not before the grand jury which returned said indictment and that he, said attorney, stated to the grand jury the facts, and told them it would be a pretty good idea to indict said woman; that appellant had run her away, and was trying to get a continuance on account of her absence, and that he would like for her to be indicted so they could catch her and bring her back as a witness, or otherwise. Supplementing this, we have before us in the record, the testimony of each of the other eye-witnesses to the homicide, and there is nothing in said testimony that appears in any way to connect said Annie Ashley with said killing. We do not think a refusal of the continuance, or the overruling of the motion solely because said Annie Ashley was under indictment, would have been proper. Doughty v. State, 18 Texas Crim. App., 179; Dodson v. State, 52 Texas Crim. Rep., 247, 106 S. W. Rep., 379; Bennett v. State, 81 S. W. Rep., 30.

While the presumption is in favor of the regularity and correctness of the rulings and acts of the courts, officers, and machinery of the State, yet when it is disclosed by the record that such action is without warrant of law or fact, and it is admitted that the purpose of such acts or rulings, was other than that which the *bona fides* of the law contemplates, this Court will not sanction same. If Annie Ashley was indicted without evidence to connect her with the crime charged, and same was admittedly for the purpose of bringing her back as a witness, the fact of such indictment would not avail the State in attempting to urge her disqualification as such witness.

This brings us to the further question as to whether said witness, if present, would likely have given the evidence set forth in said application for continuance. It was alleged that if present, she would testify the following, which we quote from said application: "that at the time that he shot deceased he was wholly insane from the use of intoxicating liquors and narcotic drugs and that he was lying flat of his back and had a very small pistol in his hand and that he shot the same without any knowledge or intent that he might shoot and injure the deceased; but shot it in an insane manner without aim and without the intent to hit deceased; and he further expects to prove by her that nothing passed between deceased and defendant at the time of the shooting that showed or tended to show

any ill-will, malice, or intent to injure the said deceased on the part of him, the defendant; that at the time he shot the deceased he was in such frame of mind caused by the recent use of intoxicating liquors and narcotic drugs combined that he was unable to form any design to injure the deceased, and did not have sufficient mental power to know what he was doing, or that he was likely to hit the deceased when he shot, and did not have sufficient mental power to form any intent to injure the deceased, and was acting wholly from an insane purpose while incapable of having or forming any intent to injure the deceased or any one else."

In the record, appears a statement sworn to by said Annie Ashley, as a witness before the grand jury, testifying concerning this homicide. After testifying as to perfectly rational conduct on the part of appellant during several hours after she first met him on the day of the homicide, and until they came to the place where the homicide occurred, and where the gas gave out in the car in which the party were riding, the witness Annie Ashley stated: "When we got out of gas, Cundiff set down in the road and said 'I will stay here all night before I will get any gas.' Mr. Pace was fooling with the engine and I was just sitting there kinder this way, just dozed off, and all at once heard the shooting and just raised up and said what in the world is that and Pace said 'it is just Albert shooting at a negro, you know how Albert is' then sister came to the car and I asked her what Albert meant and she said she didn't know, he was shooting at a negro, and I got out and went to the negro and asked him if it was a fact he was shot, and he said, 'Ma'am, Mr. Cundiff has shot me,' and I asked him where he shot him at and he put his hand on his back and said 'he shot me in my back,' and I asked him if there was anything I could do for him, and he said nothing unless I could catch his mule, and I raised up, and Mr. Pace walked up and said I couldn't catch it; that the mule ran off. When I walked up to the negro, he was lying on his face. The negro told me 'Mr. Cundiff tried to make me go get some gas and I thought he was funnying at first, and he told me he could make me get down and hug his neck, and he told me to get down, and I never thought about his shooting me, but all at once he commenced shooting me.' Mr. Pace come by that way, and stopped and told me which way the mule went, and he stood there a minute and Pace, Cundiff, and my sister came by there. After I got out of the car Pace and Cundiff never said anything, only I said to Cundiff, 'you ought to be ashamed to shoot this poor negro when he wasn't doing a thing,' and Cundiff said 'I could make him come and hug my neck, he ain't hurt.' After leaving there, Cundiff said you all know I didn't shoot first; you know he was shooting at me and I had to shoot.' Marie said: 'Why Albert, you know that negro didn't shoot at you,' and then Cundiff

said, 'Do you know how many shots were fired?' and she said 'you shot three times, and those were the only shots.' "

It thus appears that said witness herself, has given testimony under oath contrary to and contradicting the facts set up in said application, which were expected of her.

Looking to the statement of facts, and the testimony of the other eyewitnesses to the homicide, it appears that Annie Ashley was either sitting in the car, or out near the engine assisting Pace, at and preceding the homicide, and was not back of the car where the shooting occurred. We think, under these facts, the trial court correctly overruled the application for continuance, and that portion of the motion for a new trial. We are further of the opinion that legal diligence was not shown. No effort seems to have been made by appellant after the 8th of February, to procure additional processes; nor after the postponement of the case on February 20th. He seems to have contented himself with making personal inquiry as to the whereabouts of said witness, which would not be sufficient in law. We further observe that the evidence introduced in support of the contest of said motion for a new trial by the State seems to show with much certainty, that said witness entirely disappeared, and that there was no apparent likelihood that she could be found, or her evidence obtained by the ensuing term of court.

Referring to other matters complained of by appellant, the question as to whether the witness Pace knew or did not know that Lud Davis, the brother of the two women who were with appellant and Pace at the time of the shooting, was going after his sisters earlier on that day, is of no conceivable consequence, and the action of the court in allowing the State to ask said witness Pace regarding that matter, could not have had any injurious effect. This is equally true of the matters set up in the third and fourth assignments of error.

Referring to the objection to the hypothetical case put to Dr. Gregory by the State, the same seems borne out by the testimony. Appellant said he took three quarter-grain morphine tablets, one at about six a. m., one about eleven a. m., and one about three-thirty, or four p. m. The witness Pace said he saw him take two after he got with him. Appellant's wife said she saw him take the one early in the morning. Dr. Gregory testified that the taking of three quarter-grain morphine tablets, each accompanied by a drink of whisky, would not cause temporary insanity, and that if said tablets were taken at intervals of three or four hours, their effect could only be to make the appellant sleepy.

Complaint is also made of the fact that the trial court stated in reference to one of the exceptions reserved by the appellant to the testimony of Dr. Gregory, that he, the court, did not remember the testimony of taking a fourth tablet. The bill of exceptions

31—86—T. C. R.

fails to show that this remark was made in the hearing of the jury, but if it was, we think said remark was not an infringement of our statute forbidding comment on the weight of the evidence or the case by the trial court. This remark was in no way any intimation as to the case on the weight of the evidence, but was merely a statement that the court did not remember said evidence. Nothing was excluded or stricken out, and the jury heard the evidence and were the exclusive judges of the facts proven.

We have carefully examined the charge of the court, in view of the numerous exceptions taken thereto, and have concluded that none of them are sound. We do not believe any issue of manslaughter or negligent homicide arises from the evidence. Appellant was undoubtedly under the influence of liquor, and after numerous other car troubles, when the gasoline gave out, he went back of the car and sat down, and according to a State's witness, said he would stay there all night before he would go and get any gasoline. Deceased, a negro man, came riding by presently, and appellant stopped him and tried to get him to go and get gasoline. Deceased said he didn't have time. Appellant insisted that deceased was mounted and could get it for them. Deceased sat on his mule and grinned, but said nothing. Thereupon, appellant told him he would shoot him, and called him a "black son-of-a-b-h." When deceased turned to go away, appellant shot him in the back, from which shot death resulted.

After the shooting, appellant tried to get the others in the party to say nothing of the occurrence, and asked them if they did say anything about it to say that the negro shot at him first.

We think the court properly submitted only murder and temporary insanity resulting from the combined use of whisky and morphine.

Mrs. Cundiff, wife of the appellant, testified that the tablets used by him were one-quarter grain morphine tablets, which were put up for her, and by her given to appellant before he left home that morning. The trial court did not err in referring to the same as morphine.

Appellant was given ten years, and we think the evidence fully warranted the same.

Finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

February 25, 1920.

LATTIMORE, Judge.—In his motion for rehearing, appellant urges that he should have been granted a continuance, in order to

get the testimony of Annie Ashley. We have given our former opinion careful scrutiny, in the light of the earnest insistence of appellant on this point. We think our announced conclusion was correct that no sufficient diligence in his effort to obtain the presence of said witness at the trial, appears in the record. The indictment was filed September 28, 1918. The trial term of the court below began January 28, 1919, and no process of any character was sought by appellant for said witness, in the instant case, until February 10th thereafter. When the case was called for trial on February 20th, it was postponed for a week, at appellant's request, because of the absence of said witness; and, in fact, the case was not called for trial until March 5, 1919, and notwithstanding his process of February 10th had been returned prior to the calling of the case on February 20th, appellant made no application for additional process for said witness, as appears from his application for continuance, filed on March 5th, in which he sets forth merely the inquiries and personal efforts made by him to locate said witness. This would appear to be insufficient, under all the authorities.

It is now alleged that the absent testimony was mainly material for its bearing on the defense of temporary insanity, and that the statement made by said witness before the grand jury, which is quoted in our opinion, was as to other matters, and did not negative the claim made by appellant in his application, that the testimony of said witness bearing on the question of insanity, would be as set out in said application, and would be material, and likely true. Again, reviewing said application, it therefrom appears that the absent witness would testify that she saw appellant use intoxicating liquor several times, and saw him take two or three morphine tablets on the evening and night of the shooting, and that when he shot deceased he was wholly insane from this use of such liquor and drug. As stated in our opinion, it appears from the statement of this absent witness herself, made before the grand jury, that when the shooting took place, she was "sitting there kinder dozing off, and all at once I heard the shooting and raised up and said "What in the world is that?" According to the testimony of Mrs. Williams, sister of said absent witness, when the gas gave out, she, Mrs. Williams, got out of the car, and was out of the same when the shooting took place, but Mrs. Ashley did not get out of the car until after the shooting. Taking the two together, it is evident that Mrs. Ashley was in the car, but asleep or dozing, when the shooting took place, and knew nothing that occurred after the deceased came up to where the parties were, nor what passed between deceased and appellant until after the fatal shots were fired. As to her testimony regarding the liquor and morphine tablets, it in no way appears different from that given by the other witnesses, and in fact the State did not seem to take issue regarding the quantity or the character of the liquor and tablets used. These

facts fully appearing, the only remaining matter expected from said absent witness, would be her opinion as a non-expert witness, as to whether the condition of appellant was that of temporary insanity when the shooting took place. We confess that it does not appear to us sufficiently probable from the record, that said witness would have so testified, or that such testimony, if same should be her opinion and given in evidence, would likely produce a different result, this being the test properly applicable.

Being unable to agree with the contentions urged, the motion for rehearing is overruled.

*Overruled.*