JIM EVERETT V. THE STATE.

No. 14489.   Delivered March 30, 1932.
Rehearing Denied February 15, 1933.
Reported in 57 S. W. (2d) 140.

The opinion states the case.

A. R. Stout, of Ennis, and Tom Whipple, A. D. Emerson, John Hatter and Will Hancock, all of Waxahachie, for appellant.

Archie D. Gray, County Attorney, of Waxahachie, and Lloyd W. Davidson, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is robbery; the punishment, confinement in the penitentiary for five years.

J. C. Rose and Spencer Adams, both of whom were white men, and Alto McGowan, a negro, testified for the state, in substance, as follows: The three of them came from Dallas into Ellis county on the night of January 28, 1931, to make a delivery of five cases of whisky at the underpass between Red Oak and Waxahachie, Texas. The whisky was to be delivered to Stacy Childress, whom the parties believed to bear the name "Bill Green." They arrived with the whisky sometime between 7:30 and 10:00 o'clock at night, and, being apprehensive, they went on up the road two or three miles, put the whisky out of the car, and came back and stopped at the car occupied by Stacy Childress. While talking to Childress, appellant and one J. W. Cadle came running up from a Ford roadster they had parked up the road behind Childress' car, and told them to "stick them up." Appellant had a flash-light and J. W. Cadle a pistol. Cadle directed the pistol at the witnesses. Childress searched Adams and Rose. He took 55 cents off of Rose but

put it back in Rose's pocket, saying that he was a "cheap s— of a b— of a bootlegger." He got nothing off of Adams. Childress then searched Alto McGowan and took $95 from him. The witnesses were then told to get down the road, and they left in their car, going toward Dallas. A Chevrolet roadster followed them for a long way toward Dallas. After reaching Dallas, the witnesses immediately turned around and came to Waxahachie, where they reported the robbery to the officers.

Stacy Childress, an accomplice witness, testified for the state, in substance, as follows: Pursuant to an agreement with J. W. Cadle, he had arranged to buy the whisky from the negro Alto McGowan. He had called Cadle from Waxahachie and told him to meet him at the underpass, it being the purpose of the parties to "hold McGowan up" and take the whisky away from him. Cadle was to notify the other participants. Appellant came to the place after he and Cadle had already gotten there. One Billie Batchler, who was a peace officer, was present in a Ford roadster, which was parked up the road. After he (Childress), Cadle and appellant had held the parties up and had taken $95 off of McGowan, he (Childress), went up the road to where Batchler was and gave him the money. Batchler said: "Let me keep this money. They might catch you and there might be something noised about it." Batchler said he could split the money later. Appellant and Batchler then got in appellant's car and followed Rose, Adams, and McGowan along the highway toward Dallas. He (Childress) and Cadle took the whisky and brought it to town. He got six and one-half gallons of the whisky, which he carried to his father's house, and Cadle carried the balance away in Batchler's car.

Appellant testified, in substance, that he had been a peace officer in Ellis county for a number of years; that at the time of the alleged robbery he was not working in that capacity, and held no deputyship of any character; that he was present near the underpass in Batchler's car when a Ford coupe approached and stopped for a minute; that the Ford went on down the road; that he was advised that Batchler and the parties present were expecting to capture a load of whisky; that Batchler was a peace officer; that, after the car had gone on down the road, Childress advised him that the parties said they had not brought the whisky; that the car turned and went back toward Dallas; that he and Batchler got in his Chevrolet roadster and took out after the parties in an effort to catch them, believing that they had whisky in the car; that they were unable to overtake them; that they then turned around and drove back to

Waxahachie; that, if Stacy Childress and J. W. Cadle found any whisky on the road that night, he did not know anything about it; that Cadle did not have any pistol or gun on him that he knew of; that his original purpose in going to the underpass was to take one Reynolds out there; that, after Reynolds started back to town with another man, he had nothing else to do, and remained to watch the officer and his associates capture the whisky; that no one delivered any money to Billie Batchler in his presence; that he saw no robbery committed, and participated in none; that he was not a party to a conspiracy to rob the injured party.

. Bills of exception Nos. 1 to 6, inclusive, and Nos. 9 and 19, relate to the action of the court in refusing to charge the jury, in effect, that the witnesses McGowan, Adams, and Rose had been impeached, in that they had been convicted for violating the liquor laws, and were shown to be engaged in the whisky business in Dallas. It was shown by the state on direct examination of the witnesses Rose, McGowan, and Adams that they had been convicted for violating the liquor laws. The state also showed that these witnesses were then engaged in the illicit traffic of intoxicating liquor. Appellant excepted to the court's charge, as shown by the bills of exception referred to, for its failure to instruct the jury as follows: "You are instructed that if you find that said J. C. Rose's testimony has been impeached by proving that he is engaged in a business that is a crime under the laws of Texas, and was so engaged on the day of the matters alleged in the indictment, then it is your province to consider such testimony impeaching or tending to impeach the said Rose, and from it it is your duty to decide whether or not such impeachment, if any, does or does not absolutely disprove or falsify his evidence given on the trial of this cause."

A similar charge was sought as to each of the witnesses mentioned in the bills of exception. In support of his contention that the charge should have been given appellant cites Elkins v. State, 48 Texas Crim. Rep., 205, 87 S. W., 149. In that case the accused offered proof which tended to impeach the prosecuting witness. The court instructed the jury, in substance, that a witness might be impeached by showing that she had made other and different statements out of court, and that such impeaching evidence was to be considered by the jury, for what they might think it worth, for the sole purpose of enabling them to judge of the weight to be given to the testimony of the witness so impeached. The charge was objected to on the

ground that it limited the consideration of the impeaching testimony simply to the weight the jury might attach to the evidence of the prosecutrix, and did not permit the jury to consider such testimony for the purpose of affecting her credibility. In holding that the charge was too restrictive, this court expressed the opinion that, whenever the testimony of state's witnesses is attacked by showing contradictory statements, the charge contended for by the accused in Elkins' case should be given. In concluding that error was presented, the court, speaking through Judge Davidson, said: "But the charge here given withdraws from the jury that phase of the law which authorized them to consider the impeachment of a witness as affecting her credibility." The statement in the opinion that the charge contended for should be given in a case where the witnesses for the state had been impeached was not necessary to a disposition of the case. The trial court having, in Elkins' case, undertaken to submit an instruction covering the impeaching testimony, fell into error in advising the jury that it could only be considered as affecting the weight to be given to her testimony. This was manifestly incorrect, as the jury had the right to consider the testimony of the witness as affecting her credibility. The opinion is expressed that Elkins' case can not be taken as authority supporting appellant's contention. In any event, it is the general rule that, if the impeaching testimony could only be used by the jury to impeach the witness, it is not necessary to charge on the subject at all. Branch's Annotated Penal Code, sec. 180; Brown v. State, 24 Texas App., 170, 5 S. W., 685; Thompson v. State, 55 Texas Crim. Rep., 120, 113 S. W., 536. The impeaching testimony could not have been used by the jury for any other purpose than to have impeached the state's witnesses.

Bills of exception 7 and 8 recite that appellant objected to the charge of the court for its failure to limit the effect of proof that he had been indicted in Henderson county in 1931 for accepting a bribe. The court qualifies the bill of exception as follows: "The matters complained of in the above bill of exception were neither objected to by defendant nor was any exception taken in any form to any action of the court in the matter." An examination of the appellant's exceptions to the charge of the court fails to disclose any objection to the charge for its failure to limit the testimony in question. No special charge covering the subject appears to have been presented. Article 658, C. C. P., provides that, before the charge is read to the jury, the defendant or his counsel shall have a reasonable

time to examine the same, and that he shall present his objections thereto in writing, distinctly specifying each ground of objection. Article 666, C. C. P., requires that all objections to the charge, or to the refusal or modification of special charges, shall be made at the time of the trial. The necessity of compliance with the provisions of the statutes mentioned has been often emphasized in the opinions of this court. Bowling v. State, 115 Texas Crim. Rep., 4, 27 S. W. (2d) 182.

Bills of exception Nos. 10 to 12, inclusive, complain of the action of the trial court in refusing to permit the witness Billie Batchler to testify for appellant. In offering the witness, appellant filed his affidavit in which he stated, in substance, that he was charged in the indictment with J. W. Cadle, Stacy Childress and Billie Batchler with the offense of the robbery of Alto McGowan; that McGowan and those with him at the time of the alleged offense had failed to identify Batchler; that Stacy Childress, an accomplice witness, was the only party present who had in any way connected Batchler with the commission of the offense; that Childress was a perjurer, and his reputation for truth and veracity was bad; that he had reason to believe and did believe, that Batchler was indicted for the sole and only purpose of preventing him from using the said Batchler as a witness in his behalf. It appears from the bills of exception that the state did not controvert appellant's affidavit. The court declined to permit Batchler to testify, and qualified the bills of exception as follows: "The evidence in the case at the time Billie Batchler was offered by defendant as a witness had strongly raised the issue that said Batchler was an accomplice, aside from the fact that he had been indicted by the grand jury in connection with the commission of the same offense for which defendant was being tried."

Under the provisions of article 711, C. C. P., persons charged as principals, or accomplices or accessories, whether in the same or different indictments, cannot be introduced as witnesses for one another. Fagan v. State, 112 Texas Crim. Rep., 107, 14 S. W. (2d) 838. Notwithstanding the provisions of the article referred to, the fact of such indictment would not avail the state in attempting to urge the disqualification of a witness where it is shown by the record that the indictment was obtained for the purpose only of disqualifying such witness, and that there was no evidence warranting the return of said indictment. Fagan v. State, supra; Frazier v. State, 115 Texas Crim. Rep., 149, 29 S. W. (2d) 750. In the present instance, the failure to apply for a severance is not explained.

Nothing in the present record indicates any bad faith on the part of the state in procuring the indictment against Batchler. The accomplice witness Childress testified on the trial that Batchler was present and participated in the commission of the offense to the extent of receiving the money, and of aiding in driving the injured party and his companions away from the scene of the robbery. Appellant admitted on the witness stand that Batchler was present; and, further, he also testified that he and Batchler followed the injured party for some distance on the highway toward Dallas. We are constrained to hold that the trial court properly refused to permit the witness to testify.

Bill of exception No. 16 sets forth numerous questions and answers. It appears from the bill that state's witness Rose, upon cross-examination by appellant, was asked if he had been in the whisky business in Oklahoma. He replied, without objection, that he had. Appellant's counsel then asked the witness if he was in the wholesale or retail business. Upon objection by the state, the court rejected the testimony on the ground that it was immaterial. Again, the court refused to permit the witness to testify how long he was in the business in Oklahoma. The witness was further permitted to testify, in answer to questions propounded by appellant's counsel, that he was at the time of the trial engaged in the whisky business. As to the length of time had been so engaged in Texas, the court sustained the district attorney's objection. The court then permitted appellant's counsel to elicit from the witness the fact that he was taking orders for whisky from a certain place of business in Dallas. In sustaining the objection to several of the questions propounded, the court stated to counsel, in the presence and hearing of the jury, that he wanted it distinctly understood that counsel was to "stay off of that immaterial stuff from now on." Counsel replied: "We want our bill to show the remarks of the court." Unless this statement of counsel could be considered an objection to the remarks of the court, no objection is embraced in the bill of exception. It is certified in the bill that the remarks were made in an emphatic tone on two separate ocasions, and that the manner and tone of the court "was such as if none of the questions asked had anything to do with the case." Further, it is certified that "the action of the court was said and done" in a manner that was calculated to inform the jury that none of the questions asked had anything to do with the case. The bill recites that appellant excepted to the action of the court in sustaining the nu-

merous objections by the state to all the questions asked and in being told to "stay off of such immaterial stuff."

The opinion is expressed that the bill of exception is multifarious, and therefore not entitled to consideration. However, if it should be considered, we think that it fails to manifest reversible error. Appellant contends that the remark referred to was within the inhibition of article 707, C. C. P., which provides that, in ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same, or make any remark calculated to convey to the jury his opinion of the case. The opinion is expressed that the remark of the court referred solely to the questions to which the state's objection had been sustained, and that the jury could not have been impressed with the view that the trial judge was expressing an opinion that the testimony already elicited from the witness, without objection, was immaterial. We find nothing in the remarks constituting a comment on the weight of the evidence already admitted, or its bearing on the case. Nor do we believe the statement of the court was calculated to convey to the jury the trial judge's opinion of the case. In McGee v. State, 37 Texas Crim. Rep., 668, 40 S. W., 967, it is shown that the accused's counsel asked a witness a certain question, to which the state objected. In overruling the state's objection, the court said: "It is not very material, but it may go to the jury." In holding that the bill of exception relating to the matter failed to present reversible error, this court, speaking through Judge Davidson, said: "The court should refrain from expressing any opinion in regard to the effect or weight of testimony, in passing upon its admissibility or rejection, and the statute prohibits such comments; but, under the unbroken line of decisions, in order to require a reversal under such circumstances the action of the court must be reasonably calculated to operate prejudicially to the accused. If the testimony is immaterial, or slightly material, and could have had no appreciable effect on the verdict of the jury, this court will not reverse when such comments are indulged in by the trial court. In the light of this record and the bill of exceptions, we do not believe it is a question having any weight, or carrying any probative force, whether the organization was or was not secret. But, if the testimony had any bearing, it was so slight that it could not have affected the case, and it may be observed here that the appellant was given the lightest punishment for a violation of the local option law."

See, also, Whittington v. State, 118 Texas Crim. Rep., 362,

38 S. W. (2d) 814; Gallardo v. State, 101 Texas Crim. Rep., 46, 274 S. W., 150; McCoy v. State, 108 Texas Crim. Rep., 583, 2 S. W. (2d) 242.

Bill of exception No. 20 shows that the district attorney elicited from state's witness Rose the fact that he had been convicted three times in Oklahoma for violating the liquor laws, that he had been engaged in the liquor business in Dallas, and had served a term for violating the liquor laws in Texas, and that on another occasion he had been tried in a federal court and acquitted because the evidence against him was insufficient. Appellant sought to elicit from the witness, on cross-examination, that he had been acquitted in the federal court on account of the fact that the search was illegal. The court sustained the state's objection to the testimony, and appellant offered to introduce in evidence the judgment of the federal court suppressing the testimony. If it should be conceded that it was proper for appellant to prove that the witness had been acquitted because of a defective search warrant, we are unable to see how such fact could have added any material weight to the testimony already introduced touching the conviction of the witness on several occasions for violating the liquor laws. In short, the state had shown that the witness was not only engaged in the whisky business in Texas, but had been so engaged in Oklahoma, and that on several occasions he had been convicted.

It appears from bill of exception No. 18 that state's witness Childress was asked on cross-examination if he had not been convicted of cattle theft in 1918 and given a suspended sentence. The district attorney objected to the testimony on the ground that the conviction was too remote. It is recited in the bill of exception that Childress admitted on the witness stand that he had given false testimony on an examining trial of the present case. It is further recited that appellant had introduced eight witnesses who had known Childress for years, and prior to 1918, and that all of said witnesses testified that his reputation for truth and veracity was bad. It is not shown in the bill of excepiton that the trial court did not retire the jury in order that he might determine after an investigation, in the absence of the jury, whether under the ascertainable facts, the act was too remote. As far as the bill reflects the matter, the trial court might have complied with the rule laid down in Shipp v. State, 104 Texas Crim. Rep., 185, 283 S. W., 520. The fact alone that the witness had given false testimony after the indictment in the present case had been returned and that several witnesses testified that his reputation for truth and ve-

racity was bad would not, in our opinion, warrant this court in concluding that the trial court abused the discretion vested in him in determining that the testimony was too remote. Other than the indictment against the witness growing out of the present transaction, there is nothing before this court to show that during the fourteen years after his conviction for cattle theft a charge of any character had been preferred against him. See Oates v. State, 67 Texas Crim. Rep., 488, 149 S. W., 1194. In the state of the record, we are unable to say from the bill of exception that the impeaching testimony was not too remote. See Cawthon v. State, 114 Texas Crim. Rep., 86, 24 S. W. (2d) 435.

Further, it is observed that article 780, C. C. P., reads as follows:

"In any case of suspended sentence, at any time after the expiration of the time assessed as punishment by the jury, the defendant may make his written sworn motion for a new trial and dismissal of such case, stating therein that since such former trial and conviction he has not been convicted of any felony, which motion shall be heard by the court during the first term time after same is filed. If it appears to the court, upon such hearing, that the defendant has not been convicted of any other felony, the court shall enter an order reciting the fact, and shall grant the defendant a new trial and shall then dismiss said cause. After the setting aside and dismissal of any judgment of conviction as herein provided for, the fact of such conviction shall not be shown or inquired into for any purpose except in cases where the defendant has been again indicted for a felony and invokes the benefit of this law."

Appellant brings forward several bills of exception in which he complains of the action of the court in not permitting him to propound certain questions to the state's witnesses relative to their activities in the whisky business. It is observed that the state proved that the witnesses were engaged in the whisky business and had been convicted for violations of the liquor laws. This matter was gone into fully by both the state and appellant. If it should be held that the matters complained of in the bills of exception last mentioned reflect error, the opinion is expressed that in the light of the record the errors were harmless.

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the motion for rehearing, counsel for the appellant stresses the claim that the alleged improper comment of the judge trying the case discloses an imperative necessity for a reversal of the judgment of conviction. From the bill of exception, it is shown that, after sustaining the objection of state's counsel to certain questions propounded by appellant's counsel to the witness Rose, the judge made the following remark: "You may have your bill and stay off of that immaterial stuff."

Rose was one of the alleged persons robbed. He was called by the state as its first witness. On direct examination by the state, Rose testified that he was in the business of bootlegging in Dallas county; that he had been engaged in that business for three or four years; that he had been convicted of that offense in Dallas and had served a term in jail; that he had been convicted in Oklahoma for a like offense; that he did not recall having been convicted of any other felony. Similar testimony was given by the witness on cross-examination, as appears from both the statement of facts and the bill of exception.

On cross-examination, the witness Rose testified that he had formerly lived in Texas but had gone to Oklahoma when he was a small boy and lived there until he was grown. While there, he had been prosecuted for violating the law against the traffic in intoxicating liquors; that he had been twice convicted when he lived in Oklahoma and once convicted on a plea of guilty in the same state at the time he lived in Dallas, Texas; that in Dallas he had been convicted of a like offense, paid a fine and had served a jail sentence. He said, "I am in the bootlegging business in Dallas at the present time." He also testified on direct examination that he and his companions, McGowan and Adams, had, upon an agreement with Childress, brought from Dallas on the occasion of the alleged robbery five cases of whisky which they had undertaken to deliver for the sum of $90. It was shown by various witnesses that Rose and his companions brought a quantity of whisky to Ellis county on the occasion in question, and that Rose and his companions were dealers in whisky. That that was their occupation, and that they were engaged in it at the time of the transaction in question, was an uncontroverted fact.

The foregoing testimony of Rose was given in response to questions propounded by appellant's counsel, without the interposition of any objections by counsel for the state. After such testimony was given, and during the further cross-examination of Rose, certain questions were asked and certain action taken by court and counsel, which appears in the bill of exception as follows:

"Q. You were in that business up there, (Oklahoma)? A. Yes, sir.

"Q. Were you taking goods out of Dallas up to Oklahoma? (Objection by State sustained, exception by Defendant).

"Q. Are you in that business now? A. I am.

"Q. How long have you been in the bootlegging business in Texas? (Objection by State sustained, exception by defendant).

"Q. You used that place (Yarbrough's store) to carry on your business and take orders? A. That is right.

"Q. Did you keep liquor in that store? (Objection by State sustained, exception by defendant).

"Q. Where did you keep your wares? (Objection by State sustained, exception by defendant).

"Q. You have a big business? A. Not such a big business.

"Q. Enough to make a living? (Objection by State sustained, exception by defendant).

"Q. When you made this trade, where did you go to get the whisky? (Objection by State sustained, exception by defendant).

"Q. Was the whisky there at your home? (Objection by State sustained, exception by defendant).

"Q. Where were you when you started with that whisky in that car. (Objection by State sustained, exception by defendant)?"

Counsel for the appellant then remarked: "We think it is right and proper to go into every detail with reference to this whisky, because the matter has been introduced by the State; he testified he came here to deliver it, and we have a right to ask where he got it."

The court then said: "You may have your bill and stay off that immaterial stuff."

We are unable to agree with the suggestion of the appellant that the words used by the court, namely, "and stay off of that immaterial stuff" were imputable to all of the cross-examination of the witness Rose. On the contrary, the application of the remarks could be justly made alone to the questions to which the objections were addressed and sustained as above set out.

Many decisions are cited by the appellant as bearing upon his contention that the remark constituted a prohibited comment upon the weight of the evidence. In article 707, C. C. P., 1925, it is declared: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceedings previous to the return of a verdict, make any remark calculated to convey to the jury his opinion of the case."

On many occasions the court has been called upon to determine whether under a given state of facts there was a violation of the statutory rule announced and whether the remarks, though improper, were harmful.

In the case of English v. State, 85 Texas Crim. Rep., 450, in which there were remarks resulting in a reversal, the following statement is made: "It is not every comment, however, that requires reversal, for the reason that all comments are not harmful, and the question whether the judgment is to be reversed is determined, not upon the language used in making the comment, or the fact that the comment is made, but upon the consequences which probably result therefrom."

See, also, McCoy v. State, 108 Texas Crim. Rep., 583, 2 S. W. (2d) 242; Rodriguez v. State, 23 Texas App., 503; Clemmons v. State, 39 Texas Crim. Rep., 279, 45 S. W., 911. See, also, Ahlberg v. State, 88 Texas Crim. Rep., 173, 225 S. W., 253; Smith v. State, 81 Texas Crim. Rep., 368.

The cases cited by the appellant have been carefully examined. The case of Gribble v. State, 85 Texas Crim. Rep., 52, 210 S. W., 215, is stressed by the appellant as supporting his contention. The comment of the court had direct application to the evidence that was admitted before the jury. The vice in it was that it went to the jury with the opinion of the court that it was of little value. The court stated that it was a direct comment upon the weight of the evidence, calculated to convey to the jury the opinion of the court as to the merits of the case.

In the present matter, the court having sustained the objections to the questions propounded by appellant's counsel, as shown by the bill, the jurors were not aware of the answer expected, and therefore could not have been influenced by a comment of the judge upon the testimony.

In the case of Rodriguez v. State, 23 Texas App., 503, it was said: "The remarks of the judge objected to were made

concerning testimony which was rejected when offered, and, this testimony not being before the jury, for their consideration, his remarks could have had no influence upon their minds, as we can preceive."

It is to be observed that in each of these questions the objection was sustained. The bill fails to state what answers were expected from the witness and what objections were made by the state. That a bill of exception so formed presents no matter demanding consideration is established by almost innumerable precedents. See Tex. Jur., vol. 4, p. 94, sec. 58, also p. 41; C. C. P., art. 667, and cases collated in Vernon's Ann. Tex. C. C. P., vol. 2, p. 355, note 16.

The cross-examination was manifestly for the purpose of showing that the witness Rose, by reason of the nefarious business in which he was engaged and the fact that he was a lawbreaker and had been often convicted of offenses against the liquor law, was unworthy of belief, and that his testimony given before the jury should not be accepted as true. It was made clear, both from the witness Rose and other witnesses for the state, and from the cross-examination of Rose by the appellant, that he was a confirmed criminal, and had long been engaged in and often convicted for violating the law. We are not prepared to say that in making the ruling in question the court abused his judicial discretion. If the remarks in any sense offended against the statutory injunction embraced in article 707, supra, it could not, without doing violence to the statute mentioned as it has been frequently interpreted, be regarded as justifying a reversal of the judgment.

In bill of exception No. 10, it appears that the appellant offered the testimony of the witness Billie Batchler, who was under indictment for the same offense as the appellant. Because of the indictment, the court refused to receive the testimony. Appellant took a bill of exception in which it is stated that he had reason to believe, and did believe, that the indictment against him was returned for the sole purpose of preventing the appellant and J. W. Cadle from using Batchler as a witness in their behalf. The motion to permit Batchler to testify is verified by the appellant. Without any contradiction of the affidavit of the appellant, the court declined to hear the testimony of Batchler. In qualifying the bill to the overruling of the motion, the court states: "The evidence in the case at the time Billie Batchler was offered by defendant as a witness had strongly raised the issue that said Batchler was an accomplice aside from the fact that he had been indicted by the grand

jury for connection with the commission of the same offense for which defendant was being tried."

To this qualification there was no exception.

In Bill No. 11, it appears that in the motion for new trial is presented the same subject that was embraced in Bill No. 10. Batchler's testimony was again rejected upon the ground of his disqualification. Attached to the bill is a statement of the evidence which Batchler would have given. It covers a number of pages. However, a recital of it in detail is not practicable.

According to Batchler's statement, he went upon the invitation of Cadle to the underpass where the offense is charged to have been committed, and, while there, he saw and had some association with Childress, Everett and Cadle. After remaining there for some time, they returned to his home. While there, parties came in a car. The witness described their movements, including the statement that the parties had an interview with Childress. Batchler denied that Childress gave him any money. He said he knew that there was no hijacking or robbery done, and that "we are absolutely innocent of the charges brought against us." "I know, and so state upon oath, that no one was hijacked or robbed near the underpass on the date or night herein stated, while Jim Everett, J. W. Cadle and I were together, as herein shown." The witness had been a peace-officer for nine years, and bore a good reputation as a peaceable, quiet, and law-abiding citizen, and at the time of his indictment was a deputy sheriff of Ellis county and city marshal of the town of Ferris, Texas; that on the 5th of February Jim Everett, Cadle, and Childress were indicted, and the witness Batchler was not indicted until the 20th of February. Everett's trial was set for the 25th of February.

This court has many times declared in substance that a witness cannot, by the fraudulent act of the adversary, be disqualified for the purpose of preventing his testimony coming before the jury. See Doughty v. State, 18 Texas App., 179; Cundiff v. State, 86 Texas Crim. Rep., 476; Ice v. State, 84 Texas Crim. Rep., 513. To obtain the benefit of the rule, there must be evidence supporting the alleged fraud. In the present case, the regularity of the grand jury which found the indictment against Batchler was not attacked; nor does it appear that there was evidence of vice on the face of the indictment. The apparently sufficient indictment carried with it the presumption of regularity. When Batchler was offered as a witness and his indictment for the same offense appeared, his disqualification as a witness for the appellant resulted from the statute, article

711, C. C. P., also P. C., article 82. There is no evidence to support the contention that the grand jury acted corruptly or without adequate testimony. To avoid the effect of the indictment disqualifying the witness and to overcome the presumption of regularity in finding the indictment, it was essential that the appellant's attack upon the indictment should be supported by evidence. The only evidence apparently presented was that which came in the motion for new trial, to which reference has been made above, and that consists of the statement of Batchler under oath, denying his guilt and the guilt of his alleged confederates, in which statement his association with the parties charged with the commission of the offense, about the time of its alleged commission, is conceded and vouched for by his testimony.

Touching the other bills of exception, it is thought that the proper disposition of them was made in the original opinion.

For the reasons stated above, the motion for rehearing is overruled.

*Overruled.*