**HEARD v. NICHOLS et al.　(No. 722–4644.)**

Commission of Appeals of Texas, Section B.
April 27, 1927.

1. **Appeal and error** ⊜⟹672—**Error, ascertainable only by reading entire statement of facts, is not "apparent of record."**

An error which can be ascertained only by reading the entire statement of facts is not an error "apparent of record."

2. **Mines and minerals** ⊜⟹78(1)—**Lessor could plug producing gas well to prevent waste of gas without excusing lessees' failure to get production in another well.**

Where lessees failed to condition only producing gas well, so as to stop mixture of water and great waste of gas, though given every chance to do so, lessor had right to try to do so, and, failing therein, to plug well, without thereby excusing lessees' failure to get production in another well, which could be controlled, so as to keep lease alive by continued production.

3. **Mines and minerals** ⊜⟹78(1)—**Lessor could recover land after expiration of lease, where no oil or gas was being produced as required to extend it.**

Where three-year term of oil and gas lease had expired, and no oil or gas was being produced, as required to keep lease alive there-after, lessor was entitled to recover land, whether or not breach of implied covenant authorizes cancellation of lease; no forfeiture thereof being involved.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Mrs. Fannie V. W. Heard against C. F. Nichols and another. A judgment for plaintiff was reversed and the cause remanded by the Court of Civil Appeals (282 S. W. 831), and plaintiff brings error. Reversed, and judgment of the district court affirmed.

S. B. Dabney and Kennerly, Williams, Lee & Hill, all of Houston, for plaintiff in error.

Dougherty & Dougherty, of Beeville, for Nichols.

J. T. Vance, of Refugio, for Hewit.

POWELL, P. J. We quote the findings of fact and conclusions of law of the district court as follows:

"This case having been tried without a jury and decided for the plaintiff, and both the plaintiff and the defendant, C. F. Nichols and W. E. Hewit, having requested the court to make his conclusions of fact and law, and I now make and file them as follows:

"(1) I consider it unnecessary to state the nature of this suit, which is sufficiently shown by the pleadings, except as below

·"(2) The plaintiff, Mrs. Heard, is a widow. Her husband, the late W. J. Heard, died in September, 1920, testate, and his will has been probated, and his wife, the plaintiff here, his sole legatee and devisee, and entitled to every right or interest which he would have had in this suit if he had survived.

"(3) On the 12th of December, 1919, Mr. and Mrs. Heard of the first part, and Burt, of the second part, executed an agreement, Exhibit A, plaintiff's amended petition, providing for the exploitation for oil or gas, or both of them, on the land therein described, and Burt made certain assignments thereunder, and the plaintiffs (defendants) Nichols and Hewit claim under assignments.

"(4) The defendants, other than Nichols and Hewit, defaulted, and those not served were dismissed; all as appears in the judgment.

"(5) This suit was brought by Mrs. Heard, claiming, as appears from the pleadings:

"(a) That she had a right to recover the property; therefore the first count is trespass to try title.

"(b) That Burt and all persons under him claim under the agreement executed by herself and husband, mentioned above, with Burt, but that such agreement was unilateral, and bound Burt and persons under him to do nothing; therefore a revocable license, and that she has revoked it. This is the second count.

"(c) For a third count, she claims that, if the agreement was a contract and not unilateral, then that Burt, or persons under him, had failed to comply with the contract, and had brought in a gas well, but had permitted it to be injured by letting in water, to her great damage, and otherwise, as in her pleadings set out.

"She prayed for recovery of the land and for

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

general relief and damages as set out in her petition, and, if none of this relief should be awarded, then that the court should enforce specific performance, under equitable terms, but this only in the alternative.

"The defendants Nichols and Hewit claimed that there had been a performance, under their general denial, and claimed under Burt.

"(5) I find that in September, 1920, Burt and associates discontinued their drilling, and that the well at a higher level at about 1,500 feet had come in as a gas well, and blown in as a water and gas well from about the 1,900' level, and that it continued as a water and gas well, a gauge being put on the casing, and the flow of water and gas stopped from it, but flowing out from around the well and so continued flowing both water and gas in large quantities, until, in about June, 1922, when Stevenson, under an agreement with Mrs. Heard, having tried to condition the well, and failing, plugged it and stopped the flow of water and gas.

"(6) I find that the well was left unprotected; that the water and gas was permitted to mingle; that no casing was set below the 1,500' gas level; that water was flowing at about 1,700' and not shut off, no casing being used below 1,500', but mud used, and that finally the drill stem was drawn and a liner put in of much smaller diameter than the 6" casing, but sealed to it at the 1,500' level with lead, but drilled and punctured to let in the gas at that level, and again drilled and punctured at the 1,900' level, and that, when the well came in from the 1,900' level, the water and gas intermingled, and shot out of the top of the casing with great force, and was thereafter driven out through the ground around the casing in large quantities until the well was finally plugged with mud and closed by Stevenson, after he had failed to condition it. This well was not properly protected, and the water was not shut off so as to hold it back and prevent it from mingling with the gas. The well was improperly drilled and left in an improper way by Burt and associates, who were finally unable to protect it, and who were inexpert.

"(7) The well as a gas well, it producing no oil, was progressively being ruined by the intermixture of water; and their permitting water to come in in such quantities, as it did in this way, and, under the conditions it did in this well, would, and was, progressively ruining the well, and would, and was, injuring the gas strata, or stratum, from which the gas came, in violation of the law of the state; and that, in the process of time, this particular well would have been ruined as a gas well by the influx of water, and also the strata or stratum from which it was drawn would have been injured.

"(8) Mrs. Heard waited a sufficient time before bringing this suit, and Stevenson made an attempt to condition the well, all as shown in the evidence, and, having failed to condition the well, all as shown in the evidence, and having failed to condition it, plugged it, as Mrs. Heard was entitled to have it done; and this well has produced no gas, and has been plugged and absolutely dry from in June or July, 1922, to the present time.

"(9) No adequate evidence was shown in the trial of the case, showing the extent of the damage by the failure of Burt and his associates. It was shown that the well had been partially ruined and was being progressively ruined,

as well as the strata or stratum of gas, but the amount of the damage was not estimated to me.

"Conclusions of Law.

"(1) Mrs. Heard had a right to have this well conditioned on the failure of Burt and associates, and to have it plugged after that effort to condition it failed, and it was a duty on her to do these things.

"(2) The agreement with Burt (Exhibit A to the amended petition, and dated the 12th of December, 1919) provided:

"'That it should remain in force for a term of three years from this date, and as long thereafter as oil and gas or either of them are produced from said land by the lessee' and otherwise in that document set out.

"No oil or gas was produced after the well was plugged, and gas continued to escape in large quantities up to the time it was plugged, and, after all effort to condition it had failed, I have found above that Mrs. Heard had a right to condition this well, or have it done, and it was her duty to do so; and that, upon her failure, she had a right to plug it, or have it done, and that this was done. The gas was stopped, along with the water, not later than July, 1922; therefore, upon the whole case, and all of the circumstances, and looking to Mrs. Heard's right and duty to condition this well, as the right of the landowner, I conclude as a matter of law she had a right to recover, as I have adjudged. Let these conclusions of law and fact be filed by the clerk and made a part of the record."

On April 1, 1925, the district court rendered judgment in favor of Mrs. Heard as follows:

"And it is adjudged and decreed that the plaintiff (Mrs. Heard) have and recover from said defendants said tract of land, and that the agreement (oil and gas lease) executed with Burt and every right of claim however derived by the defendants or any of them be adjudged of no further force and effect."

In its final opinion in this case, the Court of Civil Appeals states that all former opinions are withdrawn. In this final opinion, reported in 282 S. W. 831, the original action dismissing the case because of failure to file briefs within the time required is mentioned. But the court says it decided to examine the records, in the absence of briefs, for fundamental errors. Upon such an examination the Court of Civil Appeals concluded as follows:

"The action of the trial court in canceling the lease for breach of an implied covenant was fundamental error apparent upon the face of the record, requiring consideration by this court, even though appellant filed no briefs.

"The judgment of the trial court is reversed, and the cause remanded for another trial."

[1] A reading of the judgment of the trial court and its conclusions of law and fact does not show that the judgment was entered because of the breach of an implied covenant. Consequently, the only way in which the Court of Civil Appeals could have reached its

conclusion aforesaid was by reading the entire statement of facts. It is well settled that an error which can be ascertained in such a way only is not an error apparent of record. See Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Ford & Damon v. Flewellen (Tex. Com. App.) 276 S. W. 903. In this last case our court settled the conflicts which had arisen in this connection among the Courts of Civil Appeals after the Kimball Case was written.

Consequently, since the sole reason for reversing this case was one which was not "apparent of record" within the meaning of our statute, such a reason cannot suffice. The judgment of the trial court should have been affirmed.

[2] Under the findings of the trial court, this lease had expired, according to its very terms, at the time its judgment was entered. Therefore Mrs. Heard was entitled to recover her land. The three years during which the lease was to continue had expired. Not only so, but no oil or gas was still being produced when the judgment was entered, and none had been produced for nearly three years. It is true that there was some production from this one gas well until Mrs. Heard interfered. But the trial court has found that she was justified in protecting her property from all this waste when the lessees failed, within a reasonable time, to protect her themselves. The trial court found that she waited a sufficient length of time before beginning this suit. In view of these findings of fact, which could be overruled only by reading the entire statement of facts, we think the trial court was justified in concluding that the lessees had no excuse for not continuing to produce some oil or gas in order to keep the lease alive. In other words, can it be said that one must continue to permit a lessee to produce some gas out of a well, when at the same time, such lessee fails or refuses to stop the mixture of water therewith and great waste of gas by reason of such production? We think not. Our statutory conservation regulations prevent such waste of gas. When the lessees failed to condition this well so as to protect it, Mrs. Heard had the right to try to do so herself. When she could not condition it, she had the further right to plug it and stop that gas well in order to avoid all the waste. The lessees had every chance first to condition the well. When it was apparent to them that this well must be plugged in order to avoid waste, they should have gotten production in another well which could be controlled if they expected to continue to produce gas and thereby keep their lease alive.

The trial court, having justified the steps taken by Mrs. Heard to protect herself, has eliminated her action as an excuse to justify the lessees in failing to get production elsewhere and in a well which could be conditioned and waste avoided. Their lease, by its very terms, had expired. Its termination at the time the trial court judgment was entered involved no forfeiture of the lease. It had no life at that time which could be forfeited.

[3] In view of what we have already said, it is not necessary for us to consider the correctness of the proposition advanced by the Court of Civil Appeals to the effect that the breach of an implied covenant will not authorize the cancellation of an oil lease. In the case at bar, the lease expired because of the failure of the lessees, without justifiable excuse, to keep it alive by observing its express conditions. The theory advanced by the Court of Civil Appeals, involving its construction of the case of Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, is a most interesting one. Since we do not have to pass upon this question, we express no opinion whatever upon it. Such question is now before the Supreme Court in the case of Waggoner Estate v. Sigler Oil Co., 284 S. W. 921, recently withdrawn from this section of the Commission of Appeals.

For the reasons stated, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed, as recommended by the Commission of Appeals.