## W. J. Fagan v. The State.

No. 12165. Delivered January 23, 1929.
Rehearing denied State March 6, 1929.

The opinion states the case.

*A. B. Geppert* of Teague for appellant.

*Sam McCorkle,* District Attorney of Mexia; *H. L. Williford* of Fairfield and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for 99 years.

Appellant owned a whiskey still, which was in operation about four miles from the town of Simsborough in Freestone County. Mr. Anderson, W. J. Hancock and Tim Willard, special state rangers, watched the still from a point approximately seventy-five yards from its location for about forty minutes. They saw appellant's sons at the still. Appellant was not in view. The officers determined to approach the still from different directions. Hancock approached it from the southwest, Willard from the northeast and Anderson from the South. According to the state's testimony, when Hancock was about twenty-four steps from the still he heard Willard holler: "Hold up, hold up." At this time appellant's sons were at the still. When Willard hollered they straightened up, but made no immediate attempt to run. In a moment Hancock heard a gun shot. It was the report of a shotgun. He heard Willard say: "Oh, Lord." After five or six seconds had elapsed, Hancock heard several pistol shots. Immediately after the shotgun fired, appellant's sons began to run away, going in a westerly direction. Hancock and Anderson pursued the boys, shooting in front of them in an endeavor to stop them. Hancock looked back while he was after the boys and saw appellant. Appellant was running north. Being unable to capture the boys, Hancock and Anderson returned to the point from where they had heard the first shot. They found Willard on the ground in a dying condition. Willard said to Hancock: "Mr. Hancock, they have got me, they have shot me all to pieces, and I am bound to die, do something for me quick." He further stated that appellant shot him and said that he shot him before "I ever seen him." He stated that appellant shot him from a clump of trees, which he pointed out. He said that after appellant

shot him, he fired upon appellant with his pistol; that appellant was running away at the time and that he dropped the shotgun with which he had shot him "right across the branch." A wagon sheet and coat were found in the clump of trees. A shotgun was found with an empty shell in it near the point pointed out by Willard as the place where appellant had dropped his gun. One barrel of the gun contained a cartridge loaded with buckshot. Appellant's sons were unarmed, and made no effort to attack the officers. They merely attempted to evade arrest by running away. As far as the record discloses, they did nothing to encourage appellant to resist arrest by the officers. The state showed that appellant had threatened to kill the officers if they interfered with him in the operation of his still. Willard died from the effects of the wound received at appellant's hands. The foregoing is a brief statement of the testimony introduced by the state.

Appellant denied that he had threatened Willard or any other person. He admitted that he was engaged in operating the still in question, but declared that his boys had nothing to do with its operation and that they were mere visitors at the time the officers approached. Appellant declared that when Willard approached the still he (Willard) began firing; that as his boys ran away Willard fired at one of them; that the boy threw up his hands and fell on his face; that he, appellant, grabbed a shotgun and fired at Willard because he believed that Willard was going to kill his boy; that after he shot at Willard he, appellant, ran away, throwing his shotgun down as he ran; that Willard fired upon him several times, some of the shots striking him; that his boy was slightly wounded.

Bills of exception Numbers 4 and 5 deal with the same subject matter. While the officers were testifying on cross examination they were asked by appellant: "From whom have you been receiving compensation?" The state objected to the question and the objection was sustained. It is stated in the bill that the witnesses would have testified that they received compensation from those who had given them instructions to shoot when anyone ran away from a still and it was necessary to stop them. The objection was properly sustained. The matter inquired about was wholly irrelevant and immaterial.

Bills of exception Numbers 8 and 9 deal with the action of the court in refusing to permit appellant's boys to testify. It is shown by these bills that appellant's case was called for trial on May 28th, 1928, and that at that time no indictments had been returned against

his sons. Thirteen days before the case was called for trial appellant had been indicted. On May 30th, two days after appellant's trial had begun, indictments were returned against appellant's sons charging them with the murder of Tim Willard. They had theretofore been held under complaint to await the action of the grand jury. The evidence on the preliminary trial of appellant's sons was substantially the same as that disclosed by the record in the instant case; and it is a fair inference that the testimony heard by the grand jury was the same as that developed on the present trial, in view of the fact that appellant, his sons, Anderson and Hancock were the only witnesses to the homicide. All of the state's witnesses testified that appellant's sons made no effort to attack the officers, that they were unarmed and that they did nothing but attempt to evade arrest by running away. In short, it is disclosed by the record that there is no evidence tending to show or showing that appellant's sons were guilty of the offense for which appellant had been indicted. Appellant offered his sons as witnesses. If they had been permitted to testify they would have corroborated appellant's version of the homicide. The state promptly took advantage of the fact that appellant's sons were under indictment for the murder of Tim Willard and the court refused to permit said witnesses to testify. We are of the opinion that the court erred. The conclusion is irresistible that appellant's sons had been indicted without evidence to connect them with the crime of murder charged against appellant and that said indictments were returned for the sole purpose of depriving appellant of their testimony. In spite of the provisions of Article 711 C. C. P., to the effect that persons charged as principals, accomplices or accessories, either in the same or different indictments, cannot be introduced as witnesses for one another, the fact of such indictments would not avail the state in attempting to urge the disqualification of appellant's sons as witnesses where it is shown by the record that the indictments were obtained for the purpose only of disqualifying such witnesses and that there was no evidence warranting the return of said indictments. In Doughty v. State, 18 Tex. Cr. App. 179, Judge Wilson considered the question we are discussing here and said:

"We can never give our sanction to such a procedure. These witnesses, if disqualified, are disqualified by the act and procurement of the plaintiff in the cause, the State of Texas, and we must say that the record before us irresistibly forces upon us the conclusion that this disqualification is attempted for the sole purpose of depriving the appellant of this testimony."

In Cundiff v. State, 86 Tex. Cr. Rep. 476, Judge Lattimore used language as follows:

"While the presumption is in favor of the legality and correctness of the rulings and acts of the courts, officers, and machinery of the state, yet when it is disclosed by the record that such action is without warrant of law or fact, and it is admitted that the purpose of such acts or rules, is other than that which the bona fides of the law contemplates, this court will not sanction same. If Annie Ashley was indicted without evidence to connect her with the crime charged, and same was admittedly for the purpose of bringing her back as a witness, the fact of such indictment did not avail the state in attempting to urge her disqualification as such witness."

See also Ice v. State, 84 Tex. Cr. Rep. 509; Dodson v. State, 52 Tex. Cr. Rep. 347.

In connection with the law of self-defense the court charged the jury as follows:

"Whenever a person by his own wrongful acts produces a condition of things wherein it becomes necessary for his own safety that he should take the life of another or do him serious bodily harm, the law imputes to him his own wrong and its consequences to the extent that they may be considered in determining the grade of offense which but for such acts would never have been occasioned. If the defendant in this case was at the time he shot Tim Willard, if he did shoot him, by himself or in connection with his boys, or either of them, violating or in the act of violating the law, and on account of his own wrong was placed in a situation wherein it became necessary for him to defend himself or his boys or either of them against an attack, real or threatened, by Tim Willard, W. J. Hancock or Boone Anderson, or either of them, which was superinduced or created by his own wrong acting by himself or in connection with his boys, or either of them, then his right of self-defense is limited under the law and regulated in accordance with the magnitude of his own wrong, if any."

This charge was properly excepted to. The court in effect told the jury that if appellant was engaged in operating a still such act would deprive him of the perfect right of self-defense. The question for the jury to determine was whether appellant or Willard fired the first shot. There was no issue of provoking a difficulty involved. Even in cases where the issue of provoking a difficulty is raised, this court has called attention to the fact that it is unnecessary to submit the charge above quoted and has suggested that such abstract statement

should be omitted. Moore v. State, 258 S. W. 476; Carlyle v. State, 255 S. W. 990.

We do not understand that appellant was deprived of the right of perfect self-defense because of the fact that he had committed a felony in view of the officers. If deceased was attempting the arrest of appellant and his sons in a lawful manner—that is, without the use of more force than was reasonably necessary for that purpose—and appellant resisted the arrest and fired at deceased, he would have been deprived of his right of self-defense. If appellant did not resist arrest and his sons were merely attempting to evade arrest by running away and deceased fired on them and it reasonably appeared to appellant, viewed from his standpoint at the time, that his sons were in danger of death or serious bodily injury at the hands of deceased, he had the right to exert all necessary force to defend his sons. Hardin v. State, 49 S. W. 607. An officer making an arrest of an offender without warrant is justified in adopting all of the measures which he might adopt in case of an arrest under a warrant. Article 216 C. C. P. In making an arrest an officer has no right to use greater force than is necessary to secure the arrest and detention of the accused. Article 241 C. C. P. An officer is required to use such force as may be necessary to prevent an escape when it is attempted, but he must not in any case kill one who attempts to escape, unless in making or attempting such escape the life of the officer is in danger or he is threatened with great bodily injury. Subdivision 8, Article 1212 P. C.

In paragraph 12 of the charge, the court predicated appellant's right to defend his sons on a finding by the jury that the officers did not attempt to arrest appellant or his boys, but that they approached them and began firing at them in a manner showing an intent to kill them or do them serious bodily injury. This is not the law. Even if the officers had attempted to arrest appellant's boys and they had evaded arrest by running away, the officers had no right to kill them in order to prevent their escape, and if it reasonably appeared to appellant, viewed from his standpoint at the time, that his boys were in danger of death or serious bodily injury at the hands of the officers, he had the right to use all proper means to protect his sons. Hardin v. State, supra.

Because of the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MORROW, Presiding Judge.—The homicide took place on April 19th. The appellant and his two sons were arrested at once. At the examining trial the two sons were placed under bond in the amount of $1,000.00. The court convened on May 7th. The appellant was indicted for murder on May 15th. The trial began on May 28th. The State closed its testimony on May 30th, and the testimony on behalf of the appellant began on the morning of June 1st. At the time of his announcement of ready for trial, and at the time the State closed its testimony, no indictment had been presented against either of the appellant's sons. When they were offered as witnesses in behalf of the appellant on the morning of June 1st, their testimony was rejected by the court upon the initiative of the State by reason of the fact that they had been indicted for the offense of murder.

From Bill of Exceptions No. 8, it appears that the only eyewitnesses to the killing of Willard were the State's witnesses, Hancock and Anderson, and the appellant's two sons. Both Hancock and Anderson testified that neither of the boys shot nor made any effort to shoot and that the only thing they did was to run. Neither the officers nor any other witness testified that either of the boys was connected with the killing of Willard. The appellant's bill of exceptions would have been more complete if it had been made to appear that the appellant sought by proper motion to withdraw his announcement of ready for trial when it was ascertained that his sons, who would give testimony in his favor, had been disqualified as witnesses by the indictment against them under the circumstances detailed. Obviously, under Art. 551, C. C. P., 1925, he would have had a right to withdraw or continue the case because of the "unexpected occurrence," and through other statutes would have had a right to have demanded a severance to the end that his sons (against whom, as it appears from the bill of exceptions, there was no evidence of guilt of the homicide) might be freed from the disability of the pending indictments and become witnesses in the appellant's favor. When, from circumstances brought about by the conduct of his adversaries one is deceived as to the presence of witnesses against him or in his favor when he announces ready for trial, he is entitled

to relief upon proper demand. This rule was announced by the Supreme Court of this State in March v. State, 44 Tex. Rep. 64, and has been reaffirmed and applied in many subsequent cases. Among them are Lindley v. State, 11 Tex. Crim. App. 283; Hendrick v. State, 47 Tex. Crim. Rep. 371; Eldridge v. State, 12 Tex. Crim. App. 208; Hodde v. State, 8 Tex. Crim. App. 383. See also Ency. of Pleading & Practice Vol 4, p. 863, par. 15; Vernon's Tex. Ann. P. C., 1925, Vol. 1, p. 472.

The remarks made in the original opinion concerning the charge of the court correctly state the views of this court touching the law applicable to the facts. Additional discussion of the matter is not deemed necessary. These remarks are made in the light of the motion for rehearing filed by the State, supported by the oral argument of State's counsel.

The motion for rehearing by the state is overruled.

*Overruled.*