This suit was instituted by William T. Locke, a minor 19 years of age, acting by and through his mother, Mrs. Ruth Locke, as next friend, against W. G. Bralley, sheriff of Wichita county, and the Globe Indemnity Company, as surety on his official bond, to recover damages for personal injuries resulting *Page 411 
from being shot in one of his hands. According to allegations in the petition, plaintiff was shot by the defendant Bralley and others accompanying him and acting with him and under his direction while plaintiff was fleeing from a still situated on a ranch in Wichita county, which was being operated in the manufacture of intoxicating liquor. It was further alleged that the still was raided by Bralley and those acting with him for the purpose of arresting the persons who were present at the still, including the plaintiff, and that Bralley was responsible, not only for his own act, but for the acts of each and all of his companions then and there acting with him or under his direction; that the wound in plaintiff's hand from the shot fired was so serious as to require the amputation of it at his wrist, and his hand was amputated shortly after the wound was inflicted.
It was further alleged that prior to the injury plaintiff was strong of body, earning $5.50 a day as an oil field worker at the time of his injury, and by reason of his injury, pain, and suffering sustained thereby, and his diminished capacity to labor in the future, he sustained damages in the sum of $25,000, for which he sued.
Upon the trial before a jury, judgment was rendered denying plaintiff any relief, and from that judgment he has prosecuted this writ of error.
The following facts were established by uncontroverted proof: C. E. Goodwin, sheriff of Archer county, and his deputy, E. L. Kinkaid, and W. G. Bralley, sheriff of Wichita county, and his deputy, H. L. White, acting upon information that an illicit still was being operated on the Ancell ranch, went for the purpose of investigating and arresting the persons guilty of the offense. The location of the still was reported to be near the boundary line between Wichita and Archer counties, and there was an understanding between the officers that an arrest would be made by the officers of the particular county in which the still might be found. They discovered the still and found that it was near the boundary line but in Wichita county. When they approached the still they discovered the plaintiff, William T. Locke, up on a tank which was a part of the equipment of the still. When plaintiff saw the officers approaching and all armed, he, together with his companion, one Tom Norwood, fled. The testimony offered by defendants was that Bralley called out to them to stop, saying that he was the sheriff, although plaintiff testified that he did not hear that command. When plaintiff failed to stop, all the officers, except Deputy White, began firing, the two sheriffs using pistols and Deputy Kinkaid using a rifle, several shots being fired by each of them and all in the direction that plaintiff was running, but none of the shots took effect, except one fired by E. L. Kinkaid, which was the one that wounded plaintiff's hand. When plaintiff discovered his hand bleeding, he stopped, turned back, and surrendered to the officers who took him to Electra to a doctor for treatment, and almost immediately the doctor amputated his hand at the wrist. The shooting took place near the middle of the day. Later an automobile owned by the plaintiff was found near the still loaded with mash and other material used in the manufacture of whisky. Prior to his injury plaintiff had been engaged in manual labor in the oil fields and had borne a good reputation; since his injury he has been unable to follow his former pursuits for a livelihood.
The following are special issues submitted to the jury with their findings thereon:
"1. Do you find from a preponderance of the evidence that at the time the arrest was attempted, Wm. T. Locke, the plaintiff, was then in the act, in the presence and view of the officers, of operating or aiding in operating a still for the manufacture of intoxicating liquors for sale? Answer: Yes.
"2. Who do you find from a preponderance of the evidence fired the shot that struck W. T. Locke? Answer: Curley Kinkaid.
"3. Do you find from a preponderance of the evidence that the person who fired the shot that struck Wm. T. Locke, fired same without any intention to kill the said Wm. T. Locke, and only with the purpose of frightening him into submitting to the arrest? Answer: Yes.
"4. Do you find from a preponderance of the evidence that the person who fired the shot that struck Wm. T. Locke was acting under orders or instructions from the defendant W. G. Bralley? Answer: No.
"5. Do you find from a preponderance of the evidence that the defendant W. G. Bralley, and any person acting under him as deputy or under his orders or instructions on the occasion of said attempted arrest, used any more than reasonable means to effect such arrest? Answer: No.
"6. Do you find from a preponderance of the evidence that the defendant W. G. Bralley and his deputy or any person acting under his orders and instructions at the time of said arrest or attempted arrest, used any greater force than was reasonably necessary to secure such arrest? Answer: No.
"7. Find from a preponderance of the evidence whether the defendant, W. G. Bralley, and the witnesses Goodwin and Kinkaid were acting together in a common purpose to effect the arrest of the plaintiff at the time of the shooting? Answer: Yes.
"8. Find from a preponderance of the evidence what amount of money, if paid now in cash, would reasonably compensate the plaintiff for the damages, if any, sustained by him. Answer: $0000." *Page 412 
The court did not err in submitting special issue No. 2 to ascertain who fired f the shot that injured the plaintiff. We believe it was also proper to submit issue No. 3, inquiring whether or not the person who fired the shot did so only for the purpose of frightening the plaintiff into submitting to an arrest and without any intention of killing him.
While it was an uncontroverted fact that plaintiff and his companion Norwood were fleeing at the time the officers were firing the shots and none of the officers was in any danger of sustaining any harm at the hands of plaintiff and his companion, we cannot say as a conclusion of law that more force was used to effect the arrest than was required. Nor can we say that the finding of the jury on that issue was not sustained by the evidence. Kinkaid testified without contradiction that he knew that a shot fired by him was the one that wounded the plaintiff; that he could tell from the dust made that one of the bullets from his rifle first struck a rock and then glanced towards plaintiff; that all the shots fired by him were aimed either above plaintiff's head or to one side of him, and one of them was fired with the intention of striking him, but for no other purpose except to frighten him into submitting to an arrest.
By article 666 of the Penal Code it is a felony to manufacture intoxicating liquors or to possess a still; and under article 671 possession of a still is prima facie unlawful.
By article 212 of the Code of Criminal Procedure it is provided that: "A peace officer * * * may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony."
Article 216 provides that: "The officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant."
Article 241 reads: "In making an arrest, all reasonable means are permitted to be used to effect it. No greater force, however, shall be resorted to than is necessary to secure the arrest and detention of the accused."
Subdivision 8 of article 1212 of the Penal Code reads as follows: "The officer or other person executing an order of arrest is required to use such force as may be necessary to prevent an escape when it is attempted, but he shall not in any case kill one who attempts to escape, unless in making or attempting such escape the life of the officer is endangered, or he is threatened with great bodily injury."
We quote the following from the syllabus in Fagan v. State,112 Tex.Crim. 107, 14 S.W.2d 838: "If officer was attempting to arrest defendant and his sons for operating still, without use of more force than was reasonably necessary, defendant resisting arrest and firing at officer would be deprived of right of self-defense under Code Cr. Proc. 1925, arts. 216, 241."
The finding of the jury that plaintiff sustained no damages by reason of having his hand so wounded as to require its amputation is of course contrary to the undisputed facts, as insisted in another assignment of error. While that attack on the finding was made one of the grounds of plaintiff's motion for new trial, yet neither in that motion nor by any assignment of error presented here, independently thereof, has an attack been made on the other findings of the jury on the ground that the bias in favor of Bralley, indicated by the finding of no damages sustained by plaintiff, was reasonably calculated to and probably did influence findings on the other issues favorably to defendant Bralley. Testimony of three jurors on the hearing of plaintiff's motion for new trial, to the effect that the finding that plaintiff has sustained no damages was made in an effort to protect the defendant Bralley from supposed possible liability for plaintiff's injury in the absence of a complaint in plaintiff's motion for new trial of such action as misconduct of the jury, and over defendants' objection thereto on that ground, is not available to plaintiff on this appeal. Nor can we say that the apparent bias of the jury in favor of Bralley, evidenced by the finding that the plaintiff sustained no damages by reason of the injury, showed fundamental error which would cause a reversal of the judgment, notwithstanding the failure of appellant to present such an assignment, on the theory that such bias was reasonably calculated to and probably did influence other findings likewise favorable to the defendants; because, in order to reach that conclusion, it would be necessary to examine the entire statement of facts, which this court is not required to do. Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S.W. 533, 124 S.W. 85; Ford Damon v. Flewellen (Tex.Com.App.) 276 S.W. 903; Heard v. Nichols (Tex.Com.App.)293 S.W. 805; 3 Texas Juris., p. 815, § 574, and authorities there cited.
In view of the findings of the jury, having sufficient support in the evidence, that, at the time of his arrest, plaintiff was engaged in the commission of a felony in the presence of the officers, and that no more force was employed than was necessary to effect the arrest, it becomes unnecessary to determine the merits of other contentions presented in briefs of both parties.
Accordingly, the judgment is affirmed, notwithstanding the serious and regrettable misfortune that plaintiff has sustained; and notwithstanding his positive testimony that he had no connection whatever with the operation of the still; that he had gone to the ranch upon Norwood's invitation, who said *Page 413 
his purpose in going was to buy some hogs; that when he was discovered by the officers on top of the tank he had merely caught hold of the pump handle to balance himself and fled from the scene because of fright when he discovered the officers armed and approaching; the jury being the exclusive judges of his credibility and of the weight of all the testimony.